UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                              Chapter 13

Eric H. Richmond,                                                   Case No. 14-41678-CEC
                                        Debtor.
-------------------------------------------------------------x
Eric H. Richmond,

                                        Plaintiff,
-against-                                                           Adv. Pro. No. 17-01080-CEC

Theresa Caruso,

                                        Defendant.
-------------------------------------------------------------x
Eric H. Richmond,

                                        Plaintiff
-against-                                                           Adv. Pro. No. 17-01105-CEC

Gregory Cerchione,

                                        Defendant.
-----------------------------------------------------------x
Eric H. Richmond,

                                        Plaintiff,
-against-                                                           Adv. Pro. No. 17-01106-CEC

Barton Schwartz,

                                        Defendant.
----------------------------------------------------------x
Eric H. Richmond,

                                        Plaintiff,
-against-                                                           Adv. Pro. No. 17-01107-CEC

Vivek Suri,

                                        Defendant.
----------------------------------------------------------x
Eric H. Richmond,

                                        Plaintiff,
-against-                                                           Adv. Pro. No. 17-01108-CEC

Glenn Warmuth,

                                        Defendant.
---------------------------------------------------------x

----------------------------------------------------------x

Eric H. Richmond,

                Plaintiff,

-against-                               Adv. Pro. No. 17-01109-CEC

Stephen Sinatra,

                Defendant.

----------------------------------------------------------x

Eric H. Richmond,

                Plaintiff,

-against-                               Adv. Pro. No. 17-01110-CEC

Jeffrey Simpson,

                Defendant.

----------------------------------------------------------x

Eric H. Richmond,

                Plaintiff,

-against-                               Adv. Pro. No. 17-01111-CEC

Catherine O'Hagan Wolfe, Amalya L. Kearse,
Richard C. Wesley, and Debra Ann Livingston,

                Defendants.

----------------------------------------------------------x

Eric H. Richmond,

                Plaintiff,

-against-                               Adv. Pro. No. 17-01113-CEC

Jennifer Kim,

                Defendant.

----------------------------------------------------------x

Eric H. Richmond,

                Plaintiff,

-against-                               Adv. Pro. No. 17-01117-CEC

Laura Jacobson,

                Defendant.

----------------------------------------------------------x

```
-----------------------------------------------------------x
Eric H. Richmond,
                        Plaintiff,
-against-                                                    Adv. Pro. No. 17-01118-CEC

Douglas Thaler,
                        Defendant.
-----------------------------------------------------------x
Eric H. Richmond,
                        Plaintiff,
-against-                                                    Adv. Pro. No. 17-01119-CEC

Vivek Suri,
                        Defendant.
-----------------------------------------------------------x
Eric H. Richmond,
                        Plaintiff,
-against-                                                    Adv. Pro. No. 17-01120-CEC

Christina Bost Seaton,
                        Defendant.
-----------------------------------------------------------x
Eric H. Richmond,
                        Plaintiff,
-against-                                                    Adv. Pro. No. 17-01125-CEC

Donald Scott Kurtz, Michael Macco,
P..#7, LLC, and Troutman Sanders, LLP,

                        Defendants.
-----------------------------------------------------------x
```

DECISION DISMISSING DEBTOR'S CASE
FOR FAILURE TO FILE A
CONFIRMABLE CHAPTER 13 PLAN
AND DISMISSING RELATED ADVERSARY PROCEEDINGS

CARLA E. CRAIG
Chief United States Bankruptcy Judge

## BACKGROUND AND PROCEDURAL HISTORY

This chapter 13 case was filed on April 7, 2014. Eric H. Richmond (the "Debtor") is the

principal of 231 Fourth Avenue Lyceum, LLC ("Lyceum"), a single asset real estate debtor

which filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Court on April

11, 2013 (the "Lyceum Case"). (Case No. 13-42125, ECF Doc. No. 1.) By decision and order

dated February 28, 2014, entered in the Lyceum Case, the automatic stay in that case was

terminated to permit continuation of the foreclosure action involving Lyceum's principal asset,

the property located at 227-231 Fourth Avenue, Brooklyn, NY (the "Lyceum Property") (the

"Lyceum Foreclosure Action"). (Case No. 13-42125-CEC, ECF Doc. Nos. 76, 77.) The

automatic stay was also terminated in this bankruptcy case by order dated July 17, 2014, to

permit the Lyceum Foreclosure Action (in which the Debtor was named as a defendant) to

continue. (Case No. 14-41678-CEC, ECF Doc. No. 56.)[1] The Lyceum Property was

subsequently sold at a foreclosure sale. The orders terminating the automatic stay in this case

and in the Lyceum Case, as well as many of the orders entered in these cases, have been the

subject of multiple motions to reconsider and appeals, all of which have been denied. (Case No.

13-42125-CEC, ECF Doc. Nos. 79, 80, 92, 116, 117, 120, 127, 160, 169, 170, 172, 174, 176,

177, 197, 199, 200; Case No. 14-41678-CEC, ECF Doc. Nos. 61, 62, 74, 77, 80, 120, 125, 126,

127, 149, 155, 177, 199, 221, 228, 251, 254, 260, 272, 273, 274, 275, 276, 316, 322, 323, 326,

363, 382, 384, 392, 413, 419, 432, 433, 444, 445, 463, 475, 503, 528.)

The claims register in this case shows that the Debtor has a single secured creditor, U.S.

Bank National Association, as trustee, on behalf of the holders of the Asset Backed Securities

Corporation Home Equity Loan Trust, Series NC 2005-HE8, Asset Backed Pass-Through

---

[1] All references to "ECF Doc. No." and "Proof of Claim No." are to documents filed in Case No. 14-41678-CEC, unless otherwise stated.

Certificates Series NC 2005 HE-8 ("U.S. Bank").  (Proof of Claim No. 5-2.)  U.S. Bank holds a

mortgage on real property owned by the Debtor located at 66 Back Meadow Rd., Nobleboro, ME

04555 (the "Maine Property").  Id.  According to its proof of claim (Proof of Claim No. 5-2),

U.S. Bank's secured claim totals $236,735.29, and pre-petition arrears owed to U.S. Bank with

respect to its secured claim total $64,078.94.  Id.  On November 13, 2014, the Debtor objected to

U.S. Bank's claim and requested that the Court disallow it.  (ECF Doc. No. 146.)  The Debtor's

motion was denied.  (ECF Doc. Nos. 266, 269.)  The order denying this motion was the subject

of a motion for reconsideration (ECF Doc. No. 272), which was denied, as well as multiple

appeals, culminating in an appeal to the Second Circuit (ECF Doc. No. 488.)  All motions for

reconsideration and appeals have been denied.  (ECF Doc. Nos. 290, 468, 488.)  Accordingly,

U.S. Bank has an allowed secured claim in this case as set forth in its proof of claim.

On May 22, 2017, the Court entered an order directing the Debtor to file an amended

chapter 13 plan on or before June 5, 2017, that pays the pre-petition arrears owed to U.S. Bank in

accordance with Bankruptcy Code § 1322(b)(5), together with applicable trustee's commissions,

in equal monthly installment payments over the remaining life of the chapter 13 plan, which may

not exceed June 30, 2019 (the "Scheduling Order"). (ECF Doc. No. 495.) The Scheduling Order

further directed the debtor provide proof that the post-petition mortgage payments owed to U.S.

Bank have been paid in accordance with Bankruptcy Code § 1322(b)(5) by June 15, 2017.  (ECF

Doc. No. 495.)  Finally, the Scheduling Order provided that in the event the Debtor fails to

comply timely with these requirements, this chapter 13 case may be dismissed without further

notice or hearing.  (ECF Doc. No. 495.)  On June 5, 2017, the Debtor filed an amended chapter

13 plan providing for payments to the chapter 13 trustee of $4,000 per month for a period of 18

months (the "Amended Plan").  (ECF Doc. No. 502.)  The Amended Plan provides for no

payments to U.S. Bank.  No proof was filed showing that post-petition mortgage payments to U.S. Bank have been made.

On June 8, 2017, U.S. Bank filed a motion for relief from the automatic stay pursuant to § 362(d) of the Bankruptcy Code, seeking stay relief based upon a lack of adequate protection under § 362(d)(1) of the Bankruptcy Code. (ECF Doc. No. 504.) The affidavit attached to U.S. Bank's motion shows that no payments have been made on the mortgage securing U.S. Bank's claim since December, 2014, prior to the commencement of this case. (ECF Doc. No. 504-1.)

On July 21, 2017, the Court issued an Order to Show Cause (I) Directing the Debtor to Show Cause Why Case Should Not Be Dismissed for Failure to Comply with Order Dated May 22, 2017 Directing Debtor to File Amended Plan and Cure Post Petition Mortgage Arrears and (II) Establishing Deadline for Filing Opposition to Lift Stay Motion, which scheduled a hearing for August 22, 2017 and required the Debtor to file any opposition to U.S. Bank's lift stay motion and to the dismissal of this chapter 13 case on or before August 4, 2017. (ECF Doc. No. 507.)

On that date, the Debtor filed an Affirmation in Opposition to Motion to Dismiss Bankruptcy and Motion to Lift Stay (ECF Doc. No. 511), in which he argued (1) this Court's alleged failure to report crimes by the Second Circuit Court of Appeals and to hold Federal Rule of Evidence hearings pursuant to Federal Rule of Evidence 201 "strip" this Court of jurisdiction; (2) U.S. Bank "failed to demonstrate how the property in question is not necessary to the reorganization of the Debtor;" (3) U.S. Bank failed to prove that there is a lack of equity in the Maine Property; (4) U.S. Bank is not the holder of the mortgage on the Maine Property (an argument that was rejected in this Court's decision denying the Debtor's motion objecting to

U.S. Banks claim (ECF Doc. No. 265), and in a motion to reconsider (ECF Doc. No. 272), and

on appeal).

Also on August 4, 2017, the Debtor filed a Motion to Recuse Judge under 28 U.S.C. §§

455 and 144. This motion was denied by Decision and Order dated August 21, 2017. (ECF Doc.

No. 526, 527.)

Commencing June 15, 2017, the Debtor filed fourteen adversary proceedings (the

"Adversary Proceedings") against the following defendants: (1) Theresa Caruso ("Caruso"), the

notary who notarized the Referee's Deed in Foreclosure transferring the Lyceum Property to

Greystone Property Development II Corp. (Adv. Pro. No. 17-01080-CEC) (seeking damages of

$25 million); (2) Gregory Cerchione, the referee who in the Lyceum Foreclosure Action (Adv.

Pro. No. 17-01105-CEC) (seeking damages of $22.8 million); (3) Barton Schwartz, a receiver

appointed in the Lyceum Foreclosure Action (Adv. Pro. No. 17-01106-CEC) (seeking damages

of $500,000); (4) Vivek Suri, an attorney who represented the receiver in the Lyceum

Foreclosure Action (Adv. Pro. No. 17-01107-CEC) (seeking damages of $150,000); (5) Glenn

Warmuth, an attorney who represented P.B. #7 LLC, which foreclosed on the Lyceum Property,

in the Lyceum Case and in this case (Adv. Pro. No. 17-01108-CEC) (seeking damages of $150

million); (6) Stephen Sinatra, an attorney for a bidder in the Lyceum Foreclosure Action (Adv.

Pro. No. 17-01109-CEC) (seeking damages of $450,000); (7) Jeffrey Simpson, a member of a

bidder in the Lyceum Foreclosure Action (Adv. Pro. No. 17-01110-CEC) (seeking damages of

$6 million); (8) Catherine O'Hagan Wolfe, the Clerk of the United States Court of Appeals for

the Second Circuit, and Amalya L. Kearse, Richard C. Wesley, and Debra Ann Livingston, each

of whom is a judge of that Court (Adv. Pro. No. 17-01111-CEC) (seeking damages of $100

million); (9) Jennifer Kim, an attorney in the New York City Buildings Department (Adv. Pro.

No. 17-01113-CEC) (seeking damages of $18 million); (10) Laura Jacobson, a justice of the

New York State Supreme Court, Kings County (Adv. Pro. No. 17-01117-CEC) (seeking

damages of $57 million); (11) Douglas Thaler, who represented U.S. Bank in this case (Adv.

Pro. No. 17-01118-CEC) (seeking damages of $900,000); (12) Vivek Suri, an attorney for the

receiver in the Lyceum Foreclosure Action (also named as a defendant in 17-01107-CEC) (Adv.

Pro. No. 17-01119-CEC) (seeking damages of $1.5 million); (13) Christina Bost Seaton, an

attorney for the plaintiff in the Lyceum Foreclosure Action (Adv. Pro. No. 17-01120-CEC)

(seeking damages of $75 million); (14) Donald Scott Kurtz, a justice of the New York State

Supreme Court, Kings County, who entered the foreclosure judgement in the Lyceum

Foreclosure Action; P.B. #7 LLC, plaintiff in the Lyceum Foreclosure Action; Troutman

Sanders, LLP, counsel for P.B. #7 LLC in the Lyceum Foreclosure Action; and Michael Macco,

the chapter 13 trustee in this case (Adv. Pro. No. 17-01125-CEC) (seeking damages of $75

million).

On August 22, 2017, a hearing was held at which the Debtor was given the opportunity to

present argument with respect to the Court's Order to Show Cause (ECF Doc. No. 507); the

chapter 13 Trustee's motions to dismiss this case (ECF Doc. Nos. 19, 250); U.S. Bank's motion

for stay relief (ECF Doc. No. 504); and a motion to dismiss Adversary Proceeding No. 17-1080-

CEC.  At the hearing, the record on these matters was completed and closed, and an order was

entered in this case (ECF Doc No. 531) and in all of the Adversary Proceedings staying the

Adversary Proceedings pending further order of the Court.

**DISCUSSION**

I.    <u>The bankruptcy case must be dismissed.</u>

Under section 1325(a)(5) of the Bankruptcy Code, a chapter 13 plan is confirmable if –

> with respect to each allowed secured claim provided for by the plan--
>> (A) the holder of such claim has accepted the plan;
>> (B)(i) the plan provides that--
>>> (I) the holder of such claim retain the lien securing such claim until the earlier of--
>>>> (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>>>> (bb) discharge under section 1328; and
>>> (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>> (iii) if--
>>> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>>> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>> (C) the debtor surrenders the property securing such claim to such holder.

11 U.S.C. § 1325(a)(5).

Section 1322(b)(5) provides an additional way that a secured claim may be treated under chapter 13: the plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."

11 U.S.C. § 1322(b)(5).  Thus, unless the secured creditor accepts the plan, or the property is

surrendered, a chapter 13 debtor has two alternative methods of treating a secured claim in a

chapter 13 plan: the debtor may either pay the entire secured claim in the plan (which may not

exceed five years in duration), in equal monthly installments, with interest, pursuant to

§ 1325(a)(5), or the debtor may cure the arrears on the secured claim over the five year life of the

plan while maintaining the regular monthly payments to the secured creditor, as provided in

§ 1322(b)(5). In re Wimmer, 512 B.R. 498, 505 (Bankr. S.D.N.Y. 2014).

  Here, the plans filed by the debtor make no provision for payment of U.S. Bank's secured

claim.  (See ECF Doc. Nos. 487, 502.)  Each of the plans filed by the debtor state that "[h]olders

of allowed secured claims shall retain the liens securing such claims and shall be paid as follows:

**NONE**."  (ECF Doc. Nos. 487, 502.)  Furthermore, the Debtor has failed to provide proof that

post-petition mortgage payments owed to U.S. Bank have been paid in accordance with

§ 1322(b)(5). Indeed, it is apparent from the affidavit filed in support of U.S. Bank's motion for

relief from the automatic stay (ECF Doc. No. 504-1) that U.S. Bank has received no post-petition

payments on the mortgage it holds on the Maine Property since December 2014.  Because the

Debtor has failed to file a plan that provides for payment of U.S. Bank's secured claim as

required by the Bankruptcy Code, under § 1325(a)(5) or under § 1322(b)(5), the case must be

dismissed. In re Addams, 564 B.R. 458, 466-67 (Bankr. E.D.N.Y. 2017) (finding the failure to

file a plan that complied with § 1322 and § 1325 to be cause for dismissal in a chapter 13 case

that had been pending for over one year, which was "an exceptionally long time for a chapter 13

case to pend without a confirmed plan."); In re Palazzolo, 55 B.R. 17, 18 (Bankr. E.D.N.Y.

1985) (where the Debtors' proposed chapter 13 plan failed to provide for full payment of the

mortgage debt, confirmation was denied and the case was dismissed).

At the hearing held on May 10, 2017, the Debtor proffered a deed purporting to transfer the Lyceum Property from Lyceum to himself, to show that "I now have a net worth of upwards $15 million. I would be able to make payments on my house in [Maine]." (Tr. 5/10/17 at 8:6-7, ECF Doc. No. 534; ECF Doc. No. 490.) The Debtor's belief that Lyceum has the ability to transfer the Lyceum Property notwithstanding the foreclosure sale appears to be based on his contention that the referee's deed conveying the Lyceum Property following the following the foreclosure sale is invalid because the referee's signature on the deed was notarized on a date five days prior to the date of the transfer as shown on the deed. The fact that the referee's signature on the deed was notarized five days prior to the date of delivery of the deed does not render it invalid, as the execution of a deed and its delivery are two separate acts, and transfer of title is not accomplished until delivery occurs. Manhattan Life Ins. Co. v. Cont'l Ins. Cos., 33 N.Y.2d 370, 372 (N.Y. 1974) (Transfer of title requires both the execution and delivery of a deed, and where a deed is executed but delivery does not occur title is not transferred.); N.Y. Real Prop. Law § 244.  Moreover, once a foreclosure sale takes place, the prior owner lacks standing to claim any "improprieties in the events surrounding the closing of title which resulted in the sale of the premises," because the owner's interest in the property is extinguished by the completion of the foreclosure sale. Kolkunova v. Guaranteed Home Mortg. Co., 842 N.Y.S. 2d 46, 48 (NY App. Div. 2007) (holding that plaintiff lacked standing after foreclosure sale to set aside the sale and reinstate her right to redeem property based upon arguments that events surrounding the closing of the sale were improper). As stated by the Second Circuit, "[b]ankruptcy courts have uniformly held that, under New York mortgage foreclosure law, a debtor's right of redemption of, and interest in, the property is extinguished by the auction, not

8

by the subsequent delivery of the deed." Rodgers v. County of Monroe (In re Rodgers), 333 F.3d 64, 67 (2d Cir. 2003).

     In any event, any action to challenge the foreclosure sale would have to be pursued in the state court which issued the foreclosure judgement. The Debtor has repeatedly sought to attack the foreclosure judgment in this case and in the Lyceum Case, and his efforts to do so have been rejected by this Court and on appeal. (E.g. ECF Doc. Nos. 206-08, 378-381, 404, 411, 456-57, 464-69; Case No. 13-42125-CEC, ECF Doc. Nos. 142, 144-45, 188) Indeed, on August 22, 2017, the Debtor made a motion to vacate the decision, dated July 17, 2014, lifting the automatic stay to permit the foreclosure of the Lyceum Property to go forward. (ECF Doc. No. 528) This is the sixth motion seeking either vacatur, reconsideration, or reargument of this decision, all of which have been denied, and upheld on appeal. The Debtor's stubborn belief that he is entitled to ownership of the Lyceum Property, notwithstanding the lifting of the automatic stay in this case and in the Lyceum Case, and the subsequent foreclosure sale of the Lyceum Property, cannot be a basis for continuing this chapter 13 case.

II.     The Adversary Proceedings must be dismissed.

     The dismissal of the bankruptcy case should also result in the dismissal of the Adversary Proceedings. Porges v. Gruntal & Co. (In re Porges), 44 F.3d 159, 162 (2d Cir. 1995). "This general rule favors dismissal because a bankruptcy court's jurisdiction over such related proceedings depends on the proceedings' nexus to the underlying bankruptcy case." Id. However, "the dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement." Id. Rather, the bankruptcy court may exercise its discretion to retain jurisdiction of those proceedings. Id. To retain jurisdiction, "a court must consider four

factors in determining whether to continue to exercise jurisdiction: judicial economy,

convenience to the parties, fairness and comity." Id. at 163.

Application of those factors results in the conclusion that the Adversary Proceedings

should be dismissed. All of the Adversary Proceedings are in the preliminary stages.  No

affidavit of service of the summons and complaint appears on the docket of any of the Adversary

Proceedings.  None of the defendants have filed an answer or otherwise responded, with the

exception of Theresa Caruso, whose motion to dismiss will be addressed below.   Litigating

these claims in this Court is no more convenient to the parties than the state court.  See W.

Vernon Energy Corp. v. Daniels, No. 06 Civ. 2414(CM), 2006 WL 1982772, at *3-4 (S.D.N.Y.

June 19, 2006) (retention of jurisdiction was improper); Cf. Porges, 44 F.3d at 163 (retention of

jurisdiction was appropriate when the "court had conducted a trial on all contested issues and had

issued a decision, and the matter awaited only the filing of findings of fact and conclusions of

law and the entry of a judgment").  Moreover, most of the alleged claims arise out of the Lyceum

Foreclosure Action and subsequent foreclosure sale, and would have to be addressed in that

forum.

Additionally, many of the Adversary Proceedings are meritless on their face.  A number

the Adversary Proceedings purport to assert claims which are based upon statements made by

attorneys in the course of, and pertinent to, litigation, and, as such, the statements are privileged

and not actionable.[2] Marek v. Old Navy (Apparel) Inc., 348 F. Supp. 2d 275, 281 (S.D.N.Y.

2004) ("It is a well established principle of New York law that statements made in judicial and

quasi-judicial proceedings are privileged and may not be actionable so long as they are pertinent

---

[2] Those adversary proceedings are: Richmond v. Suri, Adv. Pro. Nos. 17-01107-CEC and 17-01119-CEC;
Richmond v. Warmuth, Adv. Pro. No. 17-01108-CEC; Richmond v. Sinatra, Adv. Pro. No. 17-01109-CEC;
Richmond v. Kim, Adv. Pro No. 17-01113-CEC; Richmond v. Thaler, Adv. Pro. No. 17-01118-CEC; Richmond v.
Bost Seaton, Adv. Pro. No. 17-01120-CEC; and Richmond v. Kurtz, et al., Adv. Pro. No. 17-01125-CEC

to the controversy."); <u>Lipin v. Hunt</u>, 28 N.Y.S.3d 15, 17 (N.Y. App. Div. 2016) (upholding

dismissal of claims under Judiciary Law § 487 relating to statements which "were made in the

course of judicial proceedings, and were material and pertinent to the issue to be resolved in

those proceedings" making them "absolutely privileged").

Additionally, three of the Adversary Proceedings are directed at judges of the Second

Circuit Court of Appeals and the Supreme Court of New York, Kings County, and the Clerk of

the Second Circuit Court of Appeals.[3]  Other Adversary Proceedings are directed at the receiver

and the referee who were appointed in the Lyceum Foreclosure Action, and at the Chapter 13

Trustee in this case.[4]  All of these defendants are protected by immunities.  <u>Pierson v. Ray</u>, 386

U.S. 547, 554 (1967) ("[Judicial] immunity applies even when the judge is accused of acting

maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt

judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to

exercise their functions with independence and without fear of consequences.'" (quoting <u>Scott v.</u>

<u>Stansfield</u>, L.R. 3 Ex. 220, 223 (1868)); <u>Smith v. Silverman (In re Smith)</u>, 645 F.3d 186, 190 (2d

Cir. 2011) ("'[A] bankruptcy trustee is immune from suit for personal liability for acts taken as a

matter of business judgment in acting in accordance with statutory or other duty or pursuant to

court order.'" (quoting <u>Dana Commercial Credit Corp. v. Nisselson (In re Ctr. Teleproductions,</u>

<u>Inc.)</u>, 112 B.R. 567, 578 (Bankr. S.D.N.Y. 1990))); <u>Rodriguez v. Weprin</u>, 116 F.3d 62, 66 (2d

Cir. 1997) (finding that court clerks are entitled to immunity for ministerial and administrative

acts); <u>Ctr. Teleproductions</u>, 112 B.R. at 575 ("It is beyond cavil that public officials, judges, and

court officials are absolutely immune from common law tort liability actions, for acts taken

---

[3] Those adversary proceedings are: Richmond v. Wolfe, et al., Adv. Pro. No. 17-01111-CEC; Richmond v.
Jacobson, Adv. Pro. No. 17-01117-CEC; and Richmond v. Kurtz, Adv. Pro. No. 17-01125-CEC.
[4] Those adversary proceedings are: Richmond v. Cerchione, Adv. Pro. No. 17-01105-CEC; Richmond v. Schwartz,
Adv. Pro. No. 17-1106-CEC; and Richmond v. Kurtz, et al., Adv. Pro. No. 17-01125-CEC.

within the scope of their official duties."); <u>Green v. Kadilac Mortg. Bankers, Ltd.</u>, 936 F. Supp.

108, 115 (S.D.N.Y. 1996) (finding that referee was "absolutely immune from liability," and

explaining that "[n]onjudicial officials are encompassed in the absolute immunity accorded to

judges 'when their official duties have an integral relationship with the judicial process.'"

(quoting <u>Brown v. Costello</u>, 905 F. Supp. 65, 75 (N.D.N.Y. 1995); <u>Weiss v. Feigenbaum</u>, 558 F.

Supp. 265, 272 (E.D.N.Y. 1982) (Referees are protected by immunity from liability because

"[i]mmunity which derives from judicial immunity may extend to persons other than a judge

where performance of judicial acts or activity as an official aide of the judge is involved."

(quoting <u>Henrikson v. Bentley</u>, 644 F.2d 852, 855 (10th Cir. 1981))); <u>In re Liquidation of U.S.</u>

<u>Capital Ins. Co.</u>, 948 N.Y.S.2d 549, 551-52 (N.Y. Sup. Ct. 2012) ("[A] court-appointed receiver

acts as an arm of the court and is immune from liability for actions grounded in his or her

conduct as receiver," provided that the receiver acted "in good faith and with appropriate care

and prudence.").

It is appropriate, however, to address the merits of the pending motion to dismiss in

<u>Richmond v. Caruso</u>, Adv. Pro. No. 17-1080-CEC.

The defendant in that adversary proceeding, Theresa Caruso, is a notary public who

notarized the referee's signature on the Referee's deed which transferred the Lyceum Property to

Greystone Property Development II Corp.  <u>See</u> Complaint, Adv. Pro. No. 17-1080-CEC, ECF

Doc. No. 1; Referee's Deed, ECF Doc. No. 496.)  The Debtor's complaint alleges that she

wrongfully notarized the Referee's Deed on January 15, 2015, though the deed was dated

January 20, 2015.  This is alleged to have been misconduct by the notary for which the Debtor

seeks damages of $25 million pursuant to Executive Law § 135, which provides, in part, that

"[f]or any misconduct by a notary public in the performance of any of his powers such notary

public shall be liable to the parties injured for all damages sustained by them." N.Y. Exec. Law § 135.

Rule 12(b)(6) of the Federal Rules of Civil Procedure, incorporated by reference in Rule 7012 of the Federal Rules of Bankruptcy Procedure, provides that a complaint may be dismissed "for failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). The purpose of Rule 12(b)(6) "'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.'" Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011) (quoting Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In making this determination, a court must liberally construe the complaint, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. See Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008), cert. denied, 554 U.S. 930 (2008). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); see Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. In other words, plausibility "'depends on a host of considerations: the full factual picture presented by the

13

complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable.'" Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013) (quoting L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011)).

The Debtor's complaint does not state any claim of misconduct by Caruso. A notary's obligation is to attest to the validity of the signature, and the notary attestation should be dated on the date that the signer of the document presents it to her and acknowledges his signature. See Jennings-Purnell v. Donner, 52 N.Y.S.3d 98, 99 (N.Y. App. Div. 2017) ("[T]he acknowledgment 'is the verification of the fact of execution but not of the contents of the instrument.'" (quoting Pitts v. Abrams, 129 N.Y.S.2d 216, 217 (N.Y. App. Term 1954))); Bogensky v. Rosenberg, 117 N.Y.S.2d 44, 45 (N.Y. Sup. Ct. 1952) (dismissing a complaint against a notary public for certifying to the acknowledgment of a deed containing a covenant against encumbrances when the notary allegedly knew of encumbrances).

There is no allegation that execution of the deed to the Lyceum Property did not take place on January 15, 2015, as Caruso's attestation states. The fact that the deed was dated January 20, 2015, does not mean that Caruso did not fulfill her responsibility by notarizing the signature on the date it was presented to her. Nor does it reflect any defect in the deed. Execution and delivery of a deed are separate acts, and a deed may be executed in advance of delivery. Property is effectively transferred upon delivery of the deed, not upon execution. N.Y. Real Prop. Law § 244 ("A grant takes effect, so as to vest the estate or interest intended to be conveyed, only from its delivery . . . ."); Scartozzi v. Scartozzi, 856 N.Y.S.2d 154, 155–56 (N.Y. App. Div. 2008) ("When a deed is delivered to be held in escrow, the actual transfer of the

14

property does not occur until the condition of the escrow is satisfied and the deed is subsequently

delivered to the grantee by the escrow agent.").

## CONCLUSION

For the reasons stated above, the Debtor's chapter 13 case is dismissed, and all of the

Adversary Proceedings are dismissed.  It is unnecessary to rule on U.S. Bank's motion for relief

from the automatic stay because, pursuant to 11 U.S.C. § 362(c)(2)(B), the automatic stay

terminates upon the dismissal of the bankruptcy case.  An order consistent with this decision will

be entered.



**Dated: Brooklyn, New York**
**December 14, 2017**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**